[Crim. No. 13343. In Bank. Oct. 3, 1969]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS
LO CICERO, Defendant and Appellant.

T. T. Crittenden, Langford, Langford & Lane and J. Perry Langford for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Lawrence K. Keethe, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—Defendant appeals from a conviction of furnishing marijuana on November 14, 1967, and of selling marijuana on November 29, 1967, both violations of Health and Safety Code section 11531. We find that no prejudicial error occurred at trial and uphold the convictions. We hold

that the trial court erred in ruling defendant ineligible for probation under Health and Safety Code section 11715.6 because of a prior conviction of a narcotics felony not charged in the indictment. In order to bar a defendant from probation under that section, the prior conviction must be charged and determined according to the procedures laid down in the Penal Code, which provide for pleading of the prior conviction, trial of the issue, and a special verdict. Prior convictions coming to the court's attention in some other fashion, as in this case, may be considered by the court in deciding whether to grant probation, but do not render the defendant ineligible for probation.[1]

### 1. Defendant's convictions of furnishing and selling marijuana

At the trial of the instant case David Fuentes, an undercover agent, testified that on November 14, 1967, defendant gave him a marijuana cigarette. Although defendant admitted that he was riding in an automobile with Fuentes on that day, he denied giving Fuentes anything. The verdict of the jury as to the matter of credibility of the witnesses (see Evid. Code, § 312) is, of course, decisive; defendant presents no arguments to challenge his conviction for the November 14 transaction.

Fuentes further testified that on November 29 he met defendant at a pool hall and defendant agreed to sell him a kilo of marijuana for $80. Defendant told Fuentes to meet him near the Mi Ranchito Restaurant; when Fuentes arrived, defendant showed him a marijuana brick hidden in the grass. Fuentes picked it up and gave defendant the $80.

Defendant admits the November 29 transaction. He asserts two defenses: (1) immunity from prosecution under Health and Safety Code section 11710 as a person working under the direction of a police officer, and (2) duress. Defendant testified that he was serving as a police informer, working with Agent Ruben Landa. Landa had requested information as to someone named "Copeland." Although defendant stated that on November 29 he visited the pool hall, a place where he might acquire information, he did not testify explicitly whether he went there to get information for Landa. When Fuentes sought to buy marijuana, defendant refused, but

---

[1] Although defendant, in his petition for hearing, primarily relied upon the contention that he was eligible for probation, he did not abandon his arguments before the Court of Appeal, and we discuss briefly the two major propositions he presented there.

"Junior," a "lieutenant" for a syndicate operating in the area, ordered defendant to deal. Fearing that defiance of Junior's order would lead to defendant's murder by the syndicate, defendant agreed to the transaction. He expected Fuentes to pay Junior directly, but instead Fuentes thrust the money on defendant.

Defendant claims the court erred in failing to instruct, on its own motion, as to Health and Safety Code section 11710, which provides: "All duly authorized peace officers, while investigating violations of this division in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division." Defendant also objects to various evidentiary rulings which restricted inquiry into defendant's relationship with Agent Landa to events occurring in the few months preceding November 1967.[2] The problem with defendant's argument is that he has neither presented nor offered to present evidence that defendant, when engaging in the transactions of November 14 or 29, was acting under the "immediate direction, supervision, or instruction" of Landa. (Cf. *People* v. *Benford* (1959) 53 Cal.2d 1, 14 [345 P.2d 928].) Nor did defendant present or offer any evidence that he was ever requested to engage in narcotics transactions to gain information for Landa.[3]

In support of his claim of duress, defendant testified that on November 29, when he refused to sell to Fuentes, Junior approached him and said, "Why don't you sell to that cat, man, he wants a brick, two bricks or three." Defendant

---

[2]The trial court excluded evidence of conversations between defendant and Landa before July 1967 which defendant offered in order to show defendant's initial engagement as an informer, and his submission of information to Landa. It also excluded proffered testimony that Landa, after defendant's indictment, had promised to intervene on defendant's behalf with the judge and the district attorney.

[3]Defendant's testimony acknowledged the lack of specific direction from Landa:

"Q. Did Mr. Landa ever tell you to sell or furnish marijuana to anyone?

"A. No, sir, he told me not to use it or touch it unless I was put in a position that I had no choice."

". . . . . . . . . .

"Q. On this occasion were you given any directions or any type of orders whatsoever from the State Bureau of Narcotic Enforcement to sell or furnish any type of marijuana to Mr. Fuentes or anyone on November 29?

"A. I was not given any specific order to even get tough it [*sic*] unless it was absolutely necessary to take care of my own life, and that was the only reason I had, anyway, of doing it at all."

replied, "Man, I don't deal." Junior said, "You're going to this time, I got 'em." On motion of the assistant district attorney, the court struck this testimony as hearsay. Subsequently, defendant testified that he had been "taken out for a ride" and "didn't expect to get back," and that he had been threatened. The court also struck this testimony, ruling that it was immaterial.

The court erroneously ruled that the hearsay rule applied. Evidence Code section 1200, subdivision (a), states that "'Hearsay' evidence is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Junior's statements did not constitute hearsay since they obviously were not offered "to prove the truth of the matter stated"—that Fuentes wanted bricks and Junior had them—but instead to prove the words spoken by Junior to defendant.

 The error, however, caused no prejudice to defendant. Defendant did not claim duress as a defense to the November 14 charge; hence the verdict must reflect the jury's decision to believe Fuentes and disbelieve defendant as to that matter. As to the November 29 sale, a sizable portion of defendant's testimony respecting duress came in without objection;[4] we doubt that the excluded portion would have affected the jury's resolution of this issue.

In addition, neither the evidence admitted nor that excluded tended to establish a threat of imminent violence; yet such a showing is essential to a defense of duress. At the time

---

[4]Defendant testified as follows:
"Q. . . . that money had to be back to Junior?
"A. Right.
"Q. If Danny or Fuentes failed to take it back and the money didn't get back there, it would have been your neck?
"A. Yes, Sir . . . ."
"Q. You made a statement on direct examination that you told your mother because you were afraid you might not come back?
"A. That's right.
"Q. Were you afraid that Mr. Fuentes might harm you in some way?
"A. No, I was afraid that Junior knew that I was informing, and that he was setting me up, and that I would not have to worry about nothing after that because he made me sell to him and he heard me tell him that I thought he was a cop.
"Q. If Junior knew Mr. Fuentes was a cop, he still told you to sell to Mr. Fuentes, knowing this?
"A. Yes.
"Q. Even though you knew that Mr. Fuentes was a cop, you still sold or went to the Mi Ranchito Restaurant to sell the marijuana to Mr. Fuentes?
"A. I went there because I was forced into it, I would rather go with a police officer than I would in a pine box."

of the sale near the Mi Ranchito Restaurant, as distinguished from the discussion earlier in the pool hall, no member of the syndicate was present. Other than defendant, Fuentes was the only person present, and defendant was ''positive'' that Fuentes was a police officer. Defendant, however, did not attempt to avoid the transaction or seek police protection; he sought, rather, to limit his participation by not touching the brick and by having Fuentes pay Junior directly.

As to duress, the court pointed out in *People v. Otis* (1959) 174 Cal.App.2d 119 [344 P.2d 342], ''The common characteristic of all the decisions upholding the excuse lies in the immediacy and imminency of the threatened action: each represents the situation of a present and active aggressor threatening immediate danger; none depict a phantasmagoria of future harm.'' (P. 125.) *People v. Sanders* (1927) 82 Cal. App. 778 [256 P. 251], upheld an instruction that ''the danger must not be one of future violence, but of present and immediate violence at the time of the commission of the forbidden act.'' Subsequent causes have reaffirmed this instruction. (*People v. Otis, supra,* 174 Cal.App.2d 119; *People v. Simpson* (1944) 66 Cal.App.2d 319, 327-328 [152 P.2d 339]; *People v. Sing Chan* (1944) 66 Cal.App.2d 167, 171 [148 P.2d 81]; *People v. Villegas* (1938) 29 Cal.App.2d 658, 661 [85 P.2d 480].)[5]

## 2. *Defendant's eligibility for probation*

Penal Code section 1203 requires in all felony cases in which the defendant is eligible for probation that ''the court

---

[5]Defendant contends that the *Sanders* instruction is inconsistent with the more recent decision in *People v. Anderson* (1968) 264 Cal.App.2d 271 [70 Cal.Rptr. 231]. *Anderson* involved a conviction for sexual offenses committed on a 16-year-old boy who worked at defendant's ranch. Although the acts charged occurred over a three-day period, the testimony showed similar acts occurred regularly for several preceding months. The defendant had threatened the boy with beatings, with death, and with commitment to a mental institution. The Court of Appeal found that because of these threats the boy acted under duress and was not an accomplice.

Defendant argues that the victim in *Anderson* could not have been in fear of present and immediate violence for a period of several months. The *Anderson* decision, however, rests not merely on the threats by the defendant (threats much more explicit than any in the present case), but on these threats in combination with the minority of the victim and his domination by the defendant, leading to a conclusion that the *Anderson* victim ''assented,'' but did not ''consent,'' to the offenses. (See 264 Cal.App.2d at pp. 276-277; *People v. Westek* (1948) 31 Cal.2d 469, 475 [190 P.2d 9].) These additional considerations distinguish the *Anderson* holding from the present case and the line of precedent dating from *Sanders*.

must hear and determine such application." Health and Safety Code section 11715.6 states that: "In no case shall any person convicted of violating Sections 11500, 11500.5, 11501, 11502, 11503, 11530, 11530.5, 11531, 11532, 11540, 11557, or 11715, or of committing any offense referred to in those sections, be granted probation by the trial court . . . if such person has been previously convicted of any felony offense described in this division. . . ."

In the instant action defendant suffered conviction on two counts of violation of section 11531; he had previously been convicted of an infringement of section 11530 (possession of marijuana). The People did not charge the previous conviction in the indictment, although Penal Code section 969 requires that "all known previous convictions, whether in this State or elsewhere, must be charged." During cross-examination, however, defendant admitted the violations; the probation report subsequently mentioned them. Defendant contends that section 11715.6 refers only to prior convictions charged in the pleadings; the Attorney General maintains that a prior conviction will bar probation no matter by what means it comes to the attention of the court.

The California Penal Code establishes a detailed procedure for the charging, trying, and finding of previous felony convictions. (See Pen. Code, §§ 969, 969a, 969b, 969½, 1025, 1093, 1158.) This procedure affords an accused advance notice that his prior conviction is in issue (§§ 969, 969a) and gives him an opportunity to contest the fact and validity of the prior conviction to a jury (§ 1025) which will be instructed that the prosecution must prove the former conviction beyond a reasonable doubt. (2 Witkin, Cal. Crimes (1963) § 1020; see *People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523]; *In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553].) The jury must return a special verdict on the issue. (§ 1158.)

The statutes provide to the accused a safeguard of value, especially in the light of recent decisions opening opportunities for an accused to attack the validity of prior convictions.[6] In *People* v. *Ford* (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892], we held that "before a defendant can properly be sentenced to suffer the increased penalties flowing from . . .

---

[6]See *In re Dabney* (1969) *ante*, pp. 1, 5 [76 Cal.Rptr. 636, 452 P.2d 924]; *In re Caffey* (1968) 68 Cal.2d 762, 773, fn. 9 [69 Cal.Rptr. 93, 441 P.2d 933]; *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15]; *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913].

[a] finding . . . [of a prior conviction] the fact of the prior conviction . . . must be charged in the accusatory pleading, and if the defendant pleads not guilty thereto the charge must be proved and the truth of the allegation determined by the jury, or by the court if a jury is waived.'' (60 Cal.2d at p. 794.) The denial of opportunity for probation involved here is equivalent to an increase in penalty, and the principle declared in *Ford* should apply.

The instant case resembles *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], in which this court construed former section 6452 of the Penal Code (now Welf. & Inst. Code, § 3052). Section 6452 stated in part that provisions requiring a determination of a defendant's fitness for the narcotics rehabilitation program ''shall not apply to persons convicted of, or who have previously been convicted of . . . any offense set fourth in Article 1 (commencing with Section 11500) or 2 (commencing with Section 11530) of Chapter 5 of Division 10 of the Health and Safety Code . . . for which the minimum term prescribed by law is more than five years in state prison.'' Ibarra was convicted of a violation of Health and Safety Code section 11500. He had suffered two prior convictions, which if charged and proved would have required a minimum sentence of 10 years on the present conviction and thus leave him ineligible for the rehabilitation program under the language of section 6452. Nevertheless, the information charged only one prior conviction, so that Ibarra's conviction carried a five-year minimum sentence.

On application for assignment to the rehabilitation program, the trial judge found Ibarra ineligible because of the two prior convictions of narcotics felonies. We reversed, stating that, ''If an allegation of a prior conviction will bar a defendant from the program . . . that allegation should come before the court in a manner affording the defendant adequate opportunity to rebut the allegation. Charging the prior conviction in the information fulfills this requirement, but merely presenting the conviction in a probation report does not.'' (60 Cal.2d at pp. 467-468.)[7]

---

[7] *People* v. *Tell* (1954) 126 Cal.App.2d 208 [271 P.2d 568], and *People* v. *Leach* (1937) 22 Cal.App.2d 525 [71 P.2d 594], cited by the Attorney General, were limited and distinguished by *Ibarra* in the following language: ''Those cases rest on the language of section 1203, and in particular upon the requirement in that section that probation be denied 'unless the court *shall be satisfied* that he had never been previously convicted of a felony.' (Italics by the court in *People* v. *Tell, supra.*)'' (*People* v. *Ibarra*, 60 Cal.2d at p. 468, fn. 3.)

The statutory procedure for charging and proving prior convictions is specific and comprehensive; it is in common use and familiar to courts and attorneys. We see no reason to speculate on whether the language of *Ibarra* might permit the proving of a prior conviction by some different procedure which also could afford adequate opportunity to rebut the charge. We hold that whenever under Health and Safety Code section 11715.6 the fact of a prior conviction affects a defendant's eligibility for probation, the prior conviction should be charged and proved according to the relevant provisions of the Penal Code.

A question remains whether the trial judge held defendant ineligible for probation, or denied his application for probation on the merits. The probation report that was furnished the judge recommended a denial of probation but expressed its position so ambiguously that we cannot tell whether it rested upon the merits of the issue or upon a belief of defendant's ineligibility under section 11715.6.[8] The record certainly does not indicate that the judge denied the application for probation solely on the merits.[9]

---

[8] The report noted the opinion of the district attorney's office that section 11715.6 barred probation, and that defense counsel disagreed with that opinion. It concluded: "It would appear that provisions in the Health and Safety Code preclude granting of probation in the instant matter; could be defendant's attorney disagrees with this contention, however, should we leave this for the court to decide. . . . It is, therefore, respectfully recommended that this defendant's probation application be denied . . . ."

[9] For the hearing of April 15, 1968, the record sets forth the following exchange:

"THE COURT: Counsel, is there any legal cause why judgment should not be pronounced at this time?

"MR. CRITTENDEN [defense counsel]: Yes, your Honor, I believe we would like to have a probation hearing in this matter, and I believe the defendant is eligible for probation.

"THE COURT: I have reviewed the probation report, Mr. Crittenden, and the previous cause in this matter, People versus Lo Cicero, Number 9197. At this point of sentence the Court is entitled to consider the prior case, or any other cases, traffic cases, even, anything that has come up as a matter of probation, but it is not a matter that the original case, that is, the prior case in here was not pled and proved, and, therefore, shall not be considered as the law in establishing a prior offense. Had he been charged with a prior offense, then the Court may consider that, which would then bring in the Health and Safety Code Section, if he has a prior, but where there has been no charge made, the Court cannot take judicial notice of it insofar as sentencing goes, but may consider that as to the term of probation granting a probation. What is your position on that, Mr. Frantz?

"MR. FRANTZ [deputy district attorney]: Your Honor, the code section doesn't say anything about alleging the prior, just talking about granting probation. As I read the code section, if there is a prior conviction that precludes any probation—

"THE COURT: What is the code section number on that, Counsel?

Although the record is not free from ambiguity, we conclude that the trial judge probably did not rule on the merits of defendant's application for probation, but instead denied defendant's request for a hearing as to probation because of the prior conviction. In any event, a remand will permit the trial judge to weigh the question of probation free from doubt respecting the interpretation of section 11715.6[10] and aided by a probation report directed to the true issue rather than ambiguously involved in an irrelevant matter.

The judgment is reversed and the cause is remanded to the trial court for further proceedings under the directions and in conformity with the views herein expressed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

"Mr. Frantz: It's Code Section 11715.6 of the Health and Safety Code.

"The Court: As I understand the law, you have a right to take into consideration any prior convictions. Your motion for probation hearing will be denied, Mr. Crittenden.

"Mr. Crittenden: May I say a little bit further on this?

"The Court: Yes.

"Mr. Crittenden: And I was not quite through. The application in this case is precisely the same as a case of petty theft. An individual may have a record of eight, ten or more petty thefts, but if he is charged with petty theft and upon conviction thereof, if it be shown he has had prior convictions, they may be considered in giving the sentence, but he was not charged with having a prior conviction of a petty theft, therefore, it is only a misdemeanor or triable in the Justice Court, not required in the Superior Court. The same is true with respect to driving while drunk. A man who is charged with driving while drunk, and they make no further charge of a prior, the Court is without jurisdiction to consider the prior in the sentence as a mandatory jail sentence, he can get out of it. Even though that may be error, it's being done every day. It's the rule, that if he is not charged—may have been error on the part of the prosecution and it may have been intended that way in order that the ends of justice be best served, however, there must be a charge of a prior in order to bring this other section into being and application in this case. I could keep on going, same thing takes place in a robbery, with a prior, all the way through. There has to be the charge of the prior in order to bar getting of probation. That's why I feel that a probation hearing should, by all means, be heard.

"The Court: Well, your motion will be denied, Mr. Crittenden.

"Probation granted the defendant, Louis Lo Cicero, in case Number 9197, is hereby revoked. Probation in the instant case is denied."

[10]In deciding whether defendant should receive probation the trial judge may properly consider the probation report, including prior convictions appearing in that report but not charged in the pleadings. (See *People* v. *Ibarra, supra,* 60 Cal.2d at p. 467, fn. 2.)